# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | |
|---|---|
| SAFE HARBOR MARINAS, LLC, ) | |
| ) | |
| Plaintiff, ) | CASE NO. _____ |
| ) | |
| v. ) | |
| ) | JURY TRIAL DEMANDED |
| SAFE HARBOR DEVELOPMENT, LLC, ) | |
| ) | |
| Defendant. ) | |

## COMPLAINT

Plaintiff Safe Harbor Marinas, LLC ("Safe Harbor"), files this Complaint against Defendant Safe Harbor Development ("SHD") and, in support thereof, alleges as follows:

### I. INTRODUCTION

1. Safe Harbor is the largest owner and operator of marinas in the U.S. Its success has been achieved through a dedicated focus on its customers' needs and strident efforts to improve the environments in which it operates. Safe Harbor's name has generated considerable goodwill among consumers and has become synonymous with high-quality marina development, management, boat storage, and related goods and services offered throughout the United States.

2. Safe Harbor uses the trade name, trademark, and service mark SAFE HARBOR MARINAS (the "Mark") to identify all facets of its business. Safe Harbor has spent considerable time and money establishing a reputation for offering quality services and facilities, and it has built valuable consumer goodwill in its business and Mark. Every year, the public relies increasingly more on Safe Harbor's high-quality marina services.

3. Safe Harbor has used the trade name Safe Harbor Marinas since at least 2014 and the SAFE HARBOR MARINAS mark since at least 2015. The Mark has been, and is,

prominently and consistently featured on Safe Harbor's website, in its marketing, advertising, and promotional materials, in correspondence and in similar materials, and the Mark is registered on the Principal Register of the United States Patent and Trademark Office.

4. As a result of its longstanding and continuous use, Safe Harbor's Mark is well known among the boating public and trade.

5. SHD recently rebranded all of it its marinas and operations as SAFE HARBOR MARINAS. SHD's adoption and use of Safe Harbor's Mark has caused actual confusion among the public and trade and is likely to continue to do so.

6. Accordingly, Safe Harbor brings this action for trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1); false designations of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); deceptive and unfair trade practices under the Georgia Uniform Deceptive Trade Practices Act, O.C.G.A. § 10-1-372; and unfair competition under O.C.G.A. § 23-2-55 and the common law of Georgia. Among other relief, Safe Harbor seeks permanent injunctive relief, damages and profits.

## II. THE PARTIES

7. Plaintiff Safe Harbor is a limited liability company with its principal place of business at 14785 Preston Road, Dallas, Texas 75254.

8. On information and belief, Safe Harbor Development is a limited liability company with its principal place of business at 308 Letterman Road, Knoxville, TN 37919. On information and belief, SHD does not maintain an agent for service of process in the State of Georgia, despite doing business in the state. However, SHD may be served through its registered agent in Tennessee.

### III. JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction under section 39 of the Lanham Act, 15 U.S.C. § 1121, and under 28 U.S.C. §§ 1331 and 1338. Subject matter jurisdiction over Safe Harbor's related state law claims is proper pursuant to 28 U.S.C. §§ 1338 and 1367.

10. This Court has personal jurisdiction over SHD because SHD regularly transacts business within the State of Georgia, and SHD has established contacts within the State of Georgia by, among other things, owning and operating a marina in Eatonton, Georgia.

11. The Middle District of Georgia is a proper venue pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the acts or omissions giving rise to Safe Harbor's claims are occurring in this District; specifically, SHD advertises and operates a marina in Georgia using Safe Harbor's Mark.

### IV. FACTS

**A. Safe Harbor and Its SAFE HARBOR MARINAS Mark.**

12. Safe Harbor owns and/or operates 68 marinas across the United States, including in Arkansas, California, Connecticut, Florida, Georgia, Kentucky, Maryland, Massachusetts, Michigan, Mississippi, New Jersey, New York, Ohio, Oklahoma, Rhode Island, Tennessee, and Texas.

13. Safe Harbor's marinas in Georgia are located on Lake Lanier in Flowery Branch and on Lake Strom Thurmond in Appling.

14. Although Safe Harbor's marinas are operated under names that uniquely identify each marina (such as AQUALAND MARINA for Safe Harbor's marina on Lake Lanier and TRADE WINDS MARINA for Safe Harbor's marina on Lake Strom Thurmond), all of Safe

Harbor's marinas have, since well prior to the acts of SHD complained of herein, been operated under the collective service mark SAFE HARBOR MARINAS.

15. Safe Harbor has extensively and continuously used the SAFE HARBOR MARINAS Mark in connection with all of its marina products and services, resulting in extensive sales under the Mark that are growing each year.

16. The Mark enjoys wide public acceptance and substantial goodwill as a symbol of Safe Harbor's quality services and facilities, and the public has come to associate the mark with Safe Harbor alone.

17. The United States Patent and Trademark Office issued Safe Harbor Registration No. 5,351,621 on December 5, 2017, for the Mark in connection with a number of goods and services, including marina services, boat storage, and leasing of boat slips. A copy of the Certificate of Registration for the Mark is attached hereto as Exhibit 1. The registration is valid and subsisting at law.

**B.    SHD and Its Use of Safe Harbor's Mark.**

18. Upon information and belief, SHD engaged primarily in the development of entertainment and retail venues, hotels, restaurants, and mixed-use developments until 2015. One of its signature developments was The Island, a project SHD describes as "a $150M, 250,000 sq. ft. entertainment and retail complex in the heart of Pigeon Forge."

19. Upon information and belief, SHD secured the operating lease for a state-owned marina on Lake Erie in Buffalo, New York in 2015. SHD thereafter re-named the marina "Safe Harbor Marina at Buffalo Harbor State Park."

20. Since that time, SHD has slowly expanded its marina business and now owns or operates eleven marinas: two in Buffalo, New York; two in Erie, Pennsylvania; six in Tennessee;

4

and one on Lake Oconee in Georgia. SHD began operation of its Georgia marina in 2017, well after Safe Harbor was already operating two marinas in the state under its SAFE HARBOR MARINAS Mark.

21. Although SHD appears to have used "Safe Harbor Development" as a trade name in connection with marinas since 2015, the parties peacefully co-existed without confusion until recently because SHD's public-facing use of its trade name was limited and because, with the exception of Safe Harbor Marina at Buffalo Harbor State Park, SHD did not use "Safe Harbor" in the names or services marks of its marina properties. (For example, its marina on J. Percy Priest Lake in Nashville, Tennessee is named ELM HILL MARINA.) Moreover, with regard to the Buffalo Harbor marina on Lake Erie, it is more than 250 miles away – and across two states – from the nearest Safe Harbor marina in the northeast.

22. In or around May 2017 SHD engaged in a rebranding campaign pursuant to which it rebranded all of its properties under the collective service marks SAFE HARBOR MARINAS and SAFE HARBOR MARINA (collectively the "Infringing Marks"). Thus, SHD's Lake Oconee property, which is operated under the primary mark WATERFRONT ON LAKE OCONEE, is now presented to the public as being a SAFE HARBOR MARINAS property, including through use of the following logo:



23. SHD's adoption and use of the Infringing Marks to engage in directly competitive services has caused actual confusion of the public and trade as to whether SHD's services originate from, are sponsored or endorsed by, or are associated or affiliated with, Safe Harbor, and SHD's continued use of the Infringing Marks is likely to continue to cause such confusion.

24. SHD's use of the Infringing Marks is causing irreparable harm to the goodwill symbolized by the Mark and the reputation for quality that it embodies.

25. Safe Harbor – through counsel – sent a letter to SHD demanding that it cease use of the Infringing Marks, but SHD has refused to do so. Although Safe Harbor has no objection to SHD's continued use of the trade name Safe Harbor Development, Safe Harbor has no option but to file this action in order to protect Safe Harbor's rights in its SAFE HARBOR MARINAS mark.

## V. CAUSES OF ACTION

### COUNT I – Federal Trademark Infringement

26. Safe Harbor repeats and incorporates by reference the allegations in the preceding paragraphs.

27. SHD's unauthorized use of the Infringing Marks is causing, and is likely to continue to cause, confusion, deception, and mistake among the public and trade by creating the false and misleading impression that SHD's goods and services originate from, are associated or affiliated with, or have the sponsorship, endorsement, or approval of, Safe Harbor. As such, SHD's actions constitute trademark infringement in violation of 15 U.S.C. § 1114(1).

28. SHD's knowing and willful activities are causing and, unless enjoined by this Court, will continue to cause irreparable harm to Safe Harbor and the goodwill symbolized by its Mark, for which Safe Harbor has no adequate remedy at law.

29. Safe Harbor is entitled to injunctive relief and to recover the damages it has sustained, SHD's profits, enhanced profits and damages, and the costs and reasonable attorneys' fees Safe Harbor incurs in this action pursuant to 15 U.S.C. §§ 1116, and 1117.

## COUNT II – Federal Unfair Competition and False Designations of Origin

30. Safe Harbor repeats and incorporates by reference the allegations in the preceding paragraphs.

31. SHD's unauthorized use of the Infringing Marks has caused, and is likely to continue to cause, confusion, deception, and mistake among the public and trade by creating the false and misleading impression that SHD's goods and services originate from, are associated or affiliated with, or have the sponsorship, endorsement, or approval of, Safe Harbor. As such, SHD's actions constitute unfair competition and false designations of origin in violation of 15 U.S.C. § 1125(a).

32. SHD's infringing activities have caused and, unless enjoined by this Court, will continue to cause irreparable harm to Safe Harbor and the goodwill symbolized by its Mark, for which Safe Harbor has no adequate remedy at law.

33. SHD's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the Mark – all to SHD's profit and Safe Harbor's significant and irreparable harm.

34. Safe Harbor is entitled to injunctive relief and to recover the actual damages it has sustained, disgorgement of SHD's profits, enhanced profits and damages, and the costs and reasonable attorneys' fees Safe Harbor incurs in this action pursuant to 15 U.S.C. §§ 1116, and 1117.

## COUNT III – Georgia Statutory Deceptive Trade Practices

35. Safe Harbor repeats and incorporates by reference the allegations in the preceding paragraphs.

36. By virtue of SHD's acts as described herein, it is passing off its goods and services as those of Safe Harbor and causing a likelihood of confusion or of misunderstanding

that its goods and services originate from, are associated or affiliated with, or are sponsored or endorsed by, Safe Harbor in violation of Georgia's Uniform Deceptive Trade Practices Act, O.C.G.A. § 10-1-372.

37. SHD's acts were with knowledge, and in willful disregard, of Safe Harbor's rights.

38. SHD's acts have caused and, unless enjoined, will continue to cause irreparable harm to Safe Harbor's business and goodwill, for which Safe Harbor has no adequate remedy at law. As a result of SHD' willful and intentional misconduct, Safe Harbor is entitled to appropriate relief, including permanent injunctive relief, monetary damages, and SHD's profits.

39. Safe Harbor is entitled to an award of attorneys' fees pursuant to O.C.G.A. § 10-1-373, since SHD has willfully engaged in the foregoing deceptive trade practices, knowing them to be deceptive.

### COUNT IV – Georgia Statutory Unfair Competition

40. Safe Harbor repeats and incorporates by reference the allegations in the preceding paragraphs.

41. Upon information and belief, SHD has adopted and used the Infringing Marks in competition with Safe Harbor for the purpose and intent of encroaching on Safe Harbor's business. SHD's actions therefore constitute unfair competition in violation of O.C.G.A. § 23-2-55.

42. Safe Harbor has been and will continue to be irreparably harmed by SHD's actions unless and until SHD's actions are permanently enjoined.

43. Safe Harbor has no adequate remedy at law.

## COUNT V – Georgia Common Law Unfair Competition

44. Safe Harbor repeats and incorporates by reference the allegations in the preceding paragraphs.

45. Upon information and belief, SHD has adopted and used the Infringing Marks in competition with Safe Harbor with the intent of deceiving and misleading the public. SHD's actions constitute unfair competition in violation of the common law of the State of Georgia.

46. Safe Harbor has been and will continue to be irreparably harmed by SHD's actions unless and until SHD's actions are permanently enjoined.

47. Safe Harbor has no adequate remedy at law.

## PRAYER FOR RELIEF

Safe Harbor prays that:

1. The Court enter judgment that Safe Harbor owns valid and enforceable rights in its SAFE HARBOR MARINAS mark and the federal registration therefor and that SHD, as a result of its continuing unauthorized use of the Infringing Marks, has:

    a. committed service mark infringement in violation of 15 U.S.C. § 1114(1);

    b. used false designations of origin, false descriptions, and false representations in violation of 15 U.S.C. § 1125(a);

    c. engaged in deceptive trade practices in violation of O.C.G.A. § 10-1-372; and

    d. engaged in unfair competition under the Georgia Unfair Competition Statute, O.C.G.A. § 23-2-55 and the common law of Georgia;

2. SHD and all of its agents, officers, members, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by, through or under authority from SHD, or in concert or participation with SHD, be permanently enjoined from:

    a. using the SAFE HARBOR MARINAS mark;

    b. using the SAFE HABOR MARINA mark other than in connection with the marina SHD operates at Buffalo Harbor State Park; and

    c. passing off, palming off, or assisting in passing off or palming off SHD's goods or services as those of Safe Harbor, or otherwise continuing any and all acts of unfair competition or deceptive trade practices as alleged in this Complaint;

3. SHD be ordered to deliver up for impoundment and destruction all labels, signs, packages, advertising, sample books, promotional materials, stationery, or other materials in the possession, custody, or under the control of SHD that include the SAFE HARBOR MARINAS mark or the SAFE HARBOR MARINA mark, other than as SHD uses the latter mark in connection with the operation of the marina at Buffalo Harbor State Park;

4. SHD be compelled to account to Safe Harbor for any and all profits derived by SHD from its use of Safe Harbor's SAFE HARBOR MARINAS Mark;

5. Safe Harbor be awarded all damages caused by the acts forming the basis of this Complaint;

6. Based on SHD's knowing and intentional use of Safe Harbor's Mark, the damages awarded be trebled and the award of SHD's profits be enhanced as provided for by 15 U.S.C. § 1117(a);

7. Based on SHD's willful and deliberate infringement of the Mark, and to deter such conduct in the future, Safe Harbor be awarded punitive damages in an amount to be determined at trial;

8. This case be deemed an exceptional case and SHD be required to pay to Safe Harbor the costs and reasonable attorneys' fees incurred by Safe Harbor in this action pursuant to 15 U.S.C. § 1117(a) and O.C.G.A. § 10-1-373;

9. Safe Harbor be awarded pre-judgment and post-judgment interest on all monetary awards; and,

10. Safe Harbor be granted such other and further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Safe Harbor respectfully demands a trial by jury on all claims and issues so triable.

DATED: August 30, 2018.

    Respectfully submitted,

    *s/Jason D. Rosenberg*
    Jason D. Rosenberg
    Georgia Bar No. 510855
    jason.rosenberg@alston.com
    Uly S. Gunn
    Georgia Bar No. 261871
    sam.gunn@alston.com
    ALSTON & BIRD LLP
    1201 West Peachtree Street
    Atlanta, Georgia 30309-3424
    Tel.: (404) 881-7000
    Fax: (404) 881-7777

OF COUNSEL:

Brian T. Bagley
Texas Bar No. 24035541
Email: brian.bagley@akerman.com
James E. Rogers
Texas Bar No. 24051265
Email: james.rogers@akerman.com
AKERMAN LLP
1300 Post Oak Boulevard, Suite 2500
Houston, Texas 77056
Telephone: 713-623-0887
Facsimile: 713-960-1527

Michael Switzer
Illinois Bar No. 6297747
Email: michael.switzer@akerman.com
AKERMAN LLP
71 South Wacker Drive, 47th Floor
Chicago, Illinois 60606
Telephone: 312-634-5700
Facsimile: 312-424-1900

**ATTORNEYS FOR PLAINTIFF**
**SAFE HARBOR MARINAS, LLC**